## HUGGINS v. OLIVER.

1. In action by a purchaser of an intestate's lands under judgment obtained against the administrator, such judgment is conclusive upon the heirs at law, of their intestate's indebtedness, and of all issues involved in that adjudication.

2. Under a judgment against an administrator, which technically was not in proper form, the lands of the intestate were sold, and the purchaser brought action against the heirs for a recovery of such land. A few days before the trial, the plaintiff, on *ex parte* application to the Circuit judge at chambers, with consent of the administrator, obtained order amending the judgment according to the right of the case. *Held,* that the amendment was properly allowed and related back to the sale of the land.

3. Lands of an intestate may be sold under a judgment recovered against his administrator upon a debt of the intestate, but if the lands have passed into the actual and exclusive possession of the heirs before the judgment was recovered, they cannot be sold under such judgment. *Cases reviewed.*

4. Partition is conclusive evidence of actual possession under a claim of exclusive right asserted by the heirs, but it is not the only evidence. Such claim may be shown by other facts and circumstances.

5. A purchaser of the lands of an intestate under judgment against the administrator, brought action against the widow of intestate, and the vendee of such purchaser recovered the possession. Action was then brought by the widow and other heirs of intestate against

such vendee for the recovery of this land. *Held*, that the widow was estopped by the judgment had in the action against her, but that the others were not, they not being parties or privies.

Before PRESSLEY, J., Marion, October, 1883.

This was an action by Mary A. Huggins and others, heirs at law of Neal C. Huggins, against William A. Oliver, commenced September 20, 1881, for the recovery of a tract of land.

The facts are all stated in the opinion. The Circuit judge charged the jury that notwithstanding the errors in the Elvington judgment and execution against the administrator, Rogers, the levy and sale under them of the lands of the intestate, Neal C. Huggins, were effectual to convey title to the purchaser against his heirs at law, the plaintiffs, and that the said judgment and execution had been properly amended; that the lands in possession of the plaintiffs as heirs at law, although claimed and used by them as their own, were subject to levy and sale under a judgment and execution against the administrator of the estate of their ancestor obtained in an action to which said heirs were not made parties, and of which they had no notice; that the plaintiffs, as heirs at law, were estopped from setting up title against the purchaser at such sale, and that no length of possession by them would enable them to hold or claim title to the said land by reason of the statute of limitations against the defendant in this case; that heirs at law can never hold adversely against creditors of ancestor until partition, and that the separate possession of a part of the land by one of the plaintiffs, N. C. Huggins, as his share of same, amounted to nothing, because the defendant was not in possession of that part of the land.

The jury under this charge found a verdict for the defendant, and the plaintiffs appealed.

*Messrs. Blue & Walsh*, for appellants.

The judgment in *Elvington* v. *Rogers, administrator*, was against Rogers individually and did not authorize an execution against the property of the intestate. 2 *Strob.*, 3 ; 8 *Rich.*, 345 ; 16 *S. C.*, 64. The execution was directed against Rogers indi-

vidually, and could not be levied on property of intestate. *Freem. Exec.*, § 43, and authorities *supra*. The defects in this judgment were more than mere irregularities, and the order of the Circuit judge amending the same not having been made upon the motion of a party to the proceedings in which it was recovered, within a reasonable time and before it was satisfied, was without authority of law and too late to affect the title of the plaintiffs. 16 *S. C.*, 64 ; 1 *Mill Con. R.*, 133 ; 1 *Hill*, 167, 209. Heirs in possession of descended real estate for the statutory period may claim title by virtue of the statute of limitations against a purchaser at sheriff's sale under a judgment and execution against an executor or administrator. 2 *Bay*, 156, 339 ; *Rice Eq.*, 373 ; *Speer Eq.*, 250. The statute applies to an action against heirs and devisees to subject real estate in their possession to a debt of their ancestor or devisor. *Bail. Eq.*, 437 ; *Rice Eq.*, 387 ; 9 *S. C.*, 430 ; and also to actions against legatees to subject personalty in their hands to the payment of debts. 2 *Hill*, 522 ; 2 *Hill Ch.*, 496 ; *Bail. Eq.*, 437 ; 9 *S. C.*, 430. Heirs in possession are not bound by a judgment against an administrator. 2 *Hill Ch.*, 257 ; *Speer Eq.*, 250 ; 9 *S. C.*, 430 ; 19 *Id.*, 160. Lands in the actual and exclusive possession of heirs are not subject to levy and sale under a judgment and execution against an administrator. 2 *Hill*, 579 ; *Speer Eq.*, 250.

*Messrs. W. W. Harllee* and *C. A. Woods*, contra.

It matters not to whom the dower was released, and the widow of N. C. Huggins has never claimed it, and there was no bar to a recovery on the note for the purchase money. The judgment was simply an adjudication of the issues and was against Rogers *as administrator*, as in 1 *Brev.*, 289, which was a case like this. There was no defence to the action. See 6 *S. C.*, 356. The fifth exception raises a point that has been settled for eighty years. 6 *S. C.*, 356. In the cases cited contra, the actions were against the heirs, or there were other circumstances varying the case. See cases cited in 6 *S. C.*, 356. There was no partition here to show exclusive possession. 4 *McCord*, 128. There was not ten years from Rogers' purchase until the plaintiffs were ousted.

April 14th, 1884. The opinion of the court was delivered by Mr. Justice McIver. The tract of land, which is the subject matter of controversy in this action, formerly belonged to Giles Elvington, who, on September 1, 1860, sold and conveyed the same to Neal C. Huggins, who immediately went into possession and held the same until August, 1864, when he died intestate, leaving as his heirs at law his widow and children, who are the plaintiffs in this action. Subsequently to Huggins' death said Elvington recovered a judgment against Robert R. Rogers, as administrator, on a note of Neal C. Huggins, payable on January 1, 1862, to said Elvington for $586, "when Ann Eliza Elvington assigns her dower, and not until then," the declaration alleging "that Ann Eliza Elvington, wife of Giles Elvington, did renounce her dower as required by the terms of said note." The judgment was signed and the execution lodged on December 10, 1869. The informalities in this judgment and execution are set out in the "Case," but need not be stated here.

Under this execution the land in dispute was levied on by the sheriff and sold in September, 1870, at which sale one Barfield Rogers become the purchaser, and after receiving titles he brought an action against the widow alone, one of the plaintiffs in this action, to recover possession, in which he recovered judgment against her and issued his writ of *habere facias possessionem*, but he does not seem to have taken any steps towards enforcing the same. Subsequently the land was sold by the sheriff under an execution against said Barfield Rogers and bought by one Clawson T. Page, who received titles from the sheriff and an assignment from said Barfield Rogers of the said writ of *habere facias possessionem*, under which the plaintiffs, who had been in possession ever since the death of Neal C. Huggins, were ejected by the sheriff on December 30, 1879. The said Page afterwards conveyed a portion of the said tract of land to the defendant, of which he is now in possession.

It also appeared in evidence on the trial that one of the plaintiffs, H. J. Huggins, "with the consent of all the others, went into possession of a portion of the land, and held and cultivated the same for more than ten years before they were all ejected by the sheriff, and that said portion of said land so held by H. J.

Huggins was regarded by them at the time as his fair share of the whole;" but the land so held by H. J. Huggins was not embraced in that portion of the tract of which the defendant is in possession. It also appeared that H. J. Huggins had, on December 24, 1879, signed a written lease, acknowledging tenancy to Clawson T. Page, and agreeing to surrender possession to said Page on or before March 20, 1880, about which time he did surrender possession to Page.

The defendant at the trial introduced an order made at chambers a few days before the trial amending the judgment in the case of *Elvington* v. *Rogers, as administrator of Neal C. Huggins,* which order was made without notice to the plaintiffs herein, but with the consent of the administrator, Rogers.

The plaintiffs proposed to offer testimony showing that the note upon which the judgment in favor of *Elvington* v. *Rogers, administrator of Neal C. Huggins,* was based, was given for the balance due on the purchase money of the land; that it was not payable until the dower was renounced, which had never been done, and that the note had in fact been paid by Neal C. Huggins. The Circuit judge rejected the proposed testimony, "holding that the Elvington judgment against the administrator of Huggins could not be thus impeached; that the sale under it was effectual to convey title to the purchaser under whom defendant claims, and that plaintiffs were estopped from setting up title in themselves against him."

Various propositions were presented by the plaintiffs as embodying the law applicable to the case, but as they were not all made the basis of exceptions to the rulings of the Circuit judge, it is not necessary to set them out here; but it will be sufficient to state the exceptions which present the only questions which are before us for decision. The exceptions are as follows:

1. "Because his honor erred in ruling that notwithstanding the fact the note on which the judgment against the administrator was obtained, was, on its face, payable only after the wife of payee should relinquish her dower, and the relinquishment was in fact made to widow of intestate, drawer of said note, the purchaser had a good title against the heirs of intestate.

2. "Because his honor erred in ruling that the judgment hav-

ing been entered against the administrator as such, and not against the property of intestate, a sale under it was effectual to convey title to the purchaser, and plaintiffs were estopped thereby from setting up title in themselves.

3. "Because his honor erred in holding that the judgment was properly amended at the trial term of this action by consent of administrator, and without notice to the plaintiffs.

4. "Because his honor erred in ruling out testimony offered by plaintiffs, tending to show that the note on which the judgment was obtained had, in fact, been paid before action brought upon the same.

5. "Because his honor erred in charging the jury that lands in possession of heirs at law, claimed and used by them as their own, could legally be levied upon and sold under a judgment and execution against an administrator, they, the heirs, not being parties to nor having notice of the proceedings instituted to obtain such judgment.

6. "Because his honor erred in charging the jury that no length of possession by heirs at law would enable them to hold or claim title to lands by reason of the statute of limitations against a purchaser at sheriff's sale under a judgment and execution against an administrator, on a debt due by the ancestor and intestate."

The questions made by these exceptions may be stated as follows: 1. Was there error in excluding the testimony proposed by plaintiffs for the purpose of showing that Elvington was not entitled to recover in the action against Rogers as administrator of Neal C. Huggins, by reason of the fact that the dower of his wife had not been properly renounced, or by reason of the fact that the note had been paid by N. C. Huggins in his life-time? 2. As to the effect of the informality in the judgment and execution under which the land was sold, and the subsequent amendment thereof? 3. Was there error in the charge of the judge respecting the rights of a purchaser at sheriff's sale, under an execution against an administrator of an intestate, of lands in the possession of the heirs of such intestate as against said heirs?

We do not think that there was any error in excluding the testimony proposed to be offered by the plaintiffs for the purpose of

showing that Elvington was not entitled to recover in his action against the administrator of the intestate, Neal C. Huggins. The issues proposed to be raised by such testimony were concluded by the judgment in that action. If there was any valid defence to the note sued upon, it was the duty of the administrator to interpose such defence, and if he culpably neglected such duty, he may be liable to the parties interested, but the plaintiff in that action cannot thereby be deprived of any rights which he acquired by such judgment, one of which was the right to sell under such judgment the lands of his intestate debtor, unless they had been partitioned amongst his heirs, or had otherwise gone into their exclusive possession. To that action the heirs were neither necessary nor proper parties, and the administrator being the only necessary and proper party, all the issues which arose, or could have been presented in that action, are concluded by the judgment therein. *Fraser & Dill* v. *City Council of Charleston*, 19 *S. C.*, 384.

It will be observed that the question presented here is not like that in *Wilson* v. *Kelly*, 19 *S. C.*, 160, where a creditor under a proceeding to marshal assets is called in to prove his demand, and presents it in the form of a judgment recovered in an action to foreclose a mortgage of real estate, to which the heirs were not, but could have been, made parties; nor is it a case in which a creditor is seeking to subject lands in the hands of the heirs to the payment of the debts of the ancestor, as in *Gillilland & Howell* v. *Caldwell*, 1 *S. C.*, 194, in both of which cases the heirs would have the right to contest the validity of the debt upon which the judgment was recovered against the administrator. Here the question is as to the validity of a sale of the land of an intestate under a judgment recovered against his administrator in an action to which the heirs were neither necessary nor proper parties, and in such a case, following, as we are bound to do, the long line of authorities from *D'Urphey* v. *Nelson*, 1 *Brev.*, 289, decided in 1803, down to *Rogers* v. *Huggins*, 6 *S. C.*, 356, decided in 1874, we must hold that such a judgment is conclusive of all issues which were or might have been raised in the action in which it was recovered; and as the issues proposed to be raised by the testimony which was excluded were of that class

manifestly, it is quite clear that there was no error in excluding the proposed testimony.

Our next inquiry is as to the effect of the irregularities in the judgment and execution and of the subsequent amendment thereof. It appears from a certified copy of the judgment introduced at the argument here, by consent, that the judgment was in favor of Giles Elvington and against "R. R. Rogers, administrator of all and singular the goods and chattels, rights and credits, which were of Neal C. Huggins, deceased, the defendant," and the *ideo consideratum est* is, "that the said plaintiff do recover against the said defendant the damages so found as aforesaid, and also seventy-five dollars for his costs, &c., which said damages, costs, and charges in the whole amount to seven hundred and eighty-five dollars and twenty-two cents, to be levied of the goods and chattels, lands, tenements, hereditaments and other real estate which were of Neal C. Huggins, deceased, in the hands, possession, and control of the defendant, R. R. Rogers, the administrator, or otherwise." And the order to amend was that the following words be inserted in the judgment, viz.: "To be levied of the goods, chattels, lands, tenements, and real estate which were of Neal C. Huggins, deceased, in the hands, possession, and control of the defendant, R. R. Rogers, his administrator, or otherwise," which words, substantially, seem already to have been embraced in the judgment.

It also appears from a certified copy of the execution, which was likewise presented by consent at the argument here, that the sheriff was therein commanded, "that of the goods, chattels, houses, and lands, and other hereditaments and real estates of Robert R. Rogers, administrator of all and singular the goods and chattels, rights and credits which were of Neal C. Huggins, the defendant, you cause to be levied the sum of seven hundred and eighty-five dollars and twenty-two cents, * * * if he have so much of the goods and chattels, houses, lands, and other hereditaments and real estates of the said Neal C. Huggins, in his hands to be administered, or if he have not, then you cause the said debt, damages, costs, and charges to be levied of the proper goods and chattels, houses, lands, and other hereditaments of the said Robert R. Rogers."

The plaintiffs contend that the defects in the judgment and execution amounted to more than mere irregularities and made them void, or at least that they furnished no sufficient authority for the sale of the land of the intestate; and that the order of the Circuit judge granting leave to amend, not having been made upon the motion of a party to the action in which the judgment was recovered, within a reasonable time, was without authority of law, and too late to affect the title to the land sold under such judgment. We think the following authorities show that these positions cannot be maintained : *D' Urphey* v. *Nelson*, 1 *Brev.*, 289; *Hubbell* v. *Fogartie*, 1 *Hill*, 167 ; *Giles* v. *Pratt*, *Ibid*, 239, recognized as late as 1866 in *Ashmore* v. *Charles*, 14 *Rich.*, 65. In *D' Urphey* v. *Nelson*, an amendment similar to the one made in this case was suggested by the court itself in the opinion granting a new trial. And in *Giles* v. *Pratt* a similar amendment was allowed at the trial term of the action brought by the purchaser at sheriff's sale to recover the land twelve years after the judgment was recovered, and upwards of eleven years after the sheriff's sale, the judgment having been recovered in October, 1820, the sheriff's deed being dated April 14, 1821, and the trial having taken place at fall term, 1832. As is said in *Hubbell* v. *Fogartie*: "It is every day's practice to permit judgments and executions to be amended according to the right of the case, even after a sale under execution ;" and these remarks are substantially repeated in *Giles* v. *Pratt*.

The authorities relied on by the plaintiffs do not sustain their position. *Tobin* v. *Addison*, 2 *Strob.*, 3, was an action of trespass for seizing a bale of cotton belonging to the plaintiff under an execution issued by a magistrate to enforce a judgment rendered by him in favor of one Sauls against "Jabez G. Brown, guardian of Miss Owens," the execution commanding the levy of the goods and chattels of Miss Owens. The court held that the execution was void and altogether unauthorized by the judgment; that Miss Owens could not be made liable without the service of summons upon her, and her appearance by guardian, neither of which was done; and that the debt, though contracted for blacksmith work done on the plantation, was not her debt, but the debt of her guardian, with whom the contract had been

made. It is manifest that this case, in which the court had never acquired jurisdiction of the person of the party against whom the execution was issued, differs very materially from the case under consideration.,

In *Beazley* v. *Dunn*, 8 *Rich.*, 345, the action was trover to recover damages for the conversion of a mule, the property of the plaintiff. It seems that the plaintiff, as administrator of Youngblood, had been sued before a magistrate in two cases, on debts contracted by his intestate, and judgments were recovered against him. Upon these.judgments the magistrate issued executions, in which the plaintiff was styled "administrator," and under these executions the defendant, a constable, sold the mule in controversy. The court said that the only question in the case was whether the executions had been issued in conformity with the judgments; and as they were not, the court held that the executions furnished no authority for making the levy or sale. In that case no question as to the right to amend was raised, and nothing was said about it.

So, too, in *Small* v. *Small*, 16 *S. C.*, 64, no question as to the right to amend was raised, and in that case stress was laid upon the fact that it did not appear from the proceedings that Mary Small, under whose judgment the land in question had been sold, had sought to obtain a judgment which would bind the estate of her deceased husband. In that case the language of the court is as follows: "Her complaint was against the conduct of the executors. The character of her cause of action would seem to indicate that her purpose was to obtain precisely such a judgment as was rendered against Uriah Small and John S. Small as individuals; but be that as it may, she cannot claim want of notice as an innocent purchaser. She was the plaintiff in execution, and is fairly chargeable with knowledge of the terms of her own process."

The case of *Mooney* v. *Welsh*, 1 *Mill Con. R.*, 133, does not decide that five years would be a bar to a motion to amend. Judge Cheves, in delivering the opinion of the court, simply suggests that period, in analogy to the period then fixed by law as a statutory bar to an action to recover real estate, but expressly says that nothing is intended to be decided as to that point.

There is a case—*Surtell* ads. *Brailsford,* 2 *Bay.,* 333—which holds that a motion *to set aside* a judgment, after the lapse of twelve years from its entry, will not be entertained. But setting aside a judgment is a very different thing from amending it so as to conform to the real facts as presented in the record and to effect substantial justice; and, as we have seen, in the case of *Giles* v. *Pratt, supra,* the court did grant an order to amend a judgment twelve years after it had been entered, under almost the identical circumstances presented by this case.

The only remaining inquiry is, assuming that the judgment and execution were in proper form, and that the sale was in other respects legal, did it divest the title of the heirs at law of Neal C. Huggins, who were in possession at the time the sale took place? There can be no doubt that ever since the case of *D'Urphey* v. *Nelson,* 1 *Brev.,* 289, it has been uniformly held in this state that the lands of an intestate may be sold under a judgment recovered against the administrator, upon a debt of the intestate, although the heirs, to whom the title of the land had descended, were not parties to the action in which such judgment was recovered. In that case, however, nothing but the general proposition above stated was decided, and the facts of the case did not call for the statement of any qualification or exception to the general rule. In that case it did not appear that the heir had ever been in possession of the land, and the presumption is that he certainly was not in possession at the time of the sale under the judgment; because the action was brought by the heir to recover possession from the purchaser at the sheriff's sale, and if he had been in possession at the time of such sale, and desired to contest the right of such purchaser, the action would have been brought *against,* instead of being brought *by,* the heir. So, too, in the case of *Martin* v. *Latta,* 4 *McCord,* 128, it did not appear that the heirs had ever been in possession, and in fact the court, while recognizing the decision in *D'Urphey* v. *Nelson,* seemed to consider that the only question in the case was whether the fact that there was sufficient personal property to pay the debts would take the case out of the general rule.

In *Jones* v. *Wightman,* 2 *Hill,* 579, the court was for the first time called upon to consider whether there were any qualifications

or exceptions to the general rule laid down in *D'Urphey* v. *Nelson*, and it was there held that after the lands had been partitioned, and those of the heirs to whom they had been allotted had sold them to a third person, such lands could not be sold under a judgment recovered against the executors, after such partition was made. In *Bird* v. *Houze, Speer Eq.*, 250, the court went a step further, and held that where the heirs had been in the exclusive possession of the lands of an intestate, and had exercised acts of ownership over them, the same are not liable to levy and sale under an execution against the administrator, notwithstanding the fact that no regular partition had been made.

The facts of this case are important in the consideration of the question decided by it, and will therefore be briefly stated. The intestate died in 1828, and his administrator leased the land for two years, receiving the rent. In 1830 the heirs took possession, and held the same until the winter, or spring, of 1842, sometimes occupying it themselves, and at other times renting it out. In January, 1842, the widow of intestate applied to the ordinary to have partition made, and when the parties met at the ordinary's office for the purpose, the defendant, who was a joint owner of the land in question with the intestate, claimed the whole of it under the terms of some contract with intestate. This seems to have broken up the attempt then made for partition, and in April, 1842, the interest of the intestate was levied on and sold, under a judgment recovered by the defendant, on December 17, 1832, in an action against the administrator on a note of intestate, which was barred by the statute of limitations before the action was commenced. There was, however, another judgment against the intestate in favor of one Dobbin, recovered in 1828, upon which, however, there does not seem to have been any execution having active energy. At the sheriff's sale the defendant became the purchaser, and took a deed from the sheriff in April, 1842. The bill was then filed for partition, which was resisted by the defendant upon the ground that the title of complainants as heirs at law of the intestate was divested by the sheriff's sale, and that under that sale he had an absolute estate in the entire premises. Chancellor Dunkin, on Circuit, held that the exclusive possession by the heirs for such a length of time, even though

there had been no actual partition, was sufficient to defeat the right of a creditor to sell the land under the judgment against the administrator, and he therefore ordered the sheriff's sale set aside and a writ of partition to issue. On appeal, the same Chancellor delivered the opinion of the court, and after saying that the court concurred in the Circuit decree, added that the cause of action upon which the judgment was recovered being barred by the statute of limitations, it was the duty of the administrator to have pleaded the statute, and it constituted no claim against the heirs.

The last case is *Rogers* v. *Huggins*, 6 *S. C.*, 356, in which it was held that the mere fact that the heirs of an intestate were in possession of the land would not defeat the right of a creditor to have the same sold under a judgment obtained against the administrator upon a debt of the intestate.

It seems to us that the rule to be deduced from the foregoing cases is this: that while, as a general proposition, it is true that lands of an intestate may be sold under a judgment recovered against the administrator upon a debt of the intestate, yet, if the lands have passed into the actual and exclusive possession of the heirs before the judgment has been recovered, and before any lien has thus been fixed upon them, they can no longer be sold under such judgment, and can only be reached by the usual proceeding to subject real estate in the hands of the heir to the payment of the debts of the ancestor, to which proceeding the heir would, of course, be a necessary party. Without this qualification of the general rule stated in *D'Urphey* v. *Nelson*, it would be impossible to reconcile the various decisions to which we have referred, but with it the cases may all be harmonized. Certainly, after partition, lands of the intestate cannot be sold under a judgment against the administrator, as seems to be conceded in *Rogers* v. *Huggins*, which has gone further than any other case.

But it is manifest from the reasoning of O'Neall, J., in *Jones* v. *Wightman*, and Dunkin, Ch., in *Bird* v. *Houze*, that there is no inherent virtue or efficacy in the fact of partition, but that fact simply affords conclusive evidence of the further fact that the heirs have taken and asserted their right to the *exclusive* possession of the lands, without regard to the claims of creditors or any

supposed rights of the administrator to subject the lands to the payment of debts. If it were otherwise, then the case of a single heir, where partition is impossible, would be indeed an unfortunate one; but as Chancellor Dunkin well says: "Partition can give no right to several heirs which a single heir would not have without partition." The language of Judge O'Neall, that if the lands "are not in the exclusive, actual possession of the heir entitled to them, they would also be liable to execution on a judgment recovered against the executors or administrators," shows that he did not regard the fact of partition as necessary.

The real inquiry is one of fact. Does the evidence show that, before the judgment was recovered and the lien fixed upon the land, the heirs had taken actual possession under a claim of exclusive right? This may be shown not only by proof of actual partition, but also by other facts and circumstances. For example, in this very case, if the jury believed that, before the judgment was recovered, the heirs had undertaken to make a partial partition by setting off to one of them, H. J. Huggins, such a portion as was regarded his full share of the whole, this would constitute strong evidence that they then asserted an exclusive right to the land, without regard to the claims of creditors or any right of the administrator to subject it to the payment of debts. The fact that the defendant is not in possession of the particular portion allotted to H. J. Huggins, could not affect the question as to whether such partial partition furnished sufficient evidence that the heirs then asserted their exclusive right to the lands of their ancestor. We think, therefore, that the fifth ground of appeal is well taken. But if the judgment was recovered and a lien thereby fixed upon the lands, before they passed into the actual and exclusive possession of the heirs, such lien would follow the lands when they so passed into the hands of the heirs, and could be enforced against them, unless the heirs have had possession for a sufficient length of time to protect them, under the decisions in *McRaa* v. *Smith*, 2 *Bay.*, 339; *Lamar* v. *Raysor*, 7 *Rich.*, 509.

The plaintiffs not having made the refusal of the Circuit judge to charge the second proposition submitted by them the basis of any of their exceptions or grounds of appeal, the question pre-

sented by that proposition is not, strictly speaking, properly before us. But as the rule is that the judgment below must be affirmed if there is any ground upon which it can be sustained, and as the judgment in this case could be sustained if the Circuit judge was right in refusing to charge that proposition, it becomes necessary for us to consider it. The question presented by that proposition is whether the judgment recovered by Barfield Rogers against Mary A. Huggins (6 *S. C.*, 356,) can affect the rights of the plaintiffs herein other than the said Mary A. Huggins. They were not parties to that case, and they are not privies of any party thereto. And hence it is perfectly clear that the judgment in that case is not binding upon them, although it is equally clear that Mary A. Huggins is bound thereby and is estopped from setting up any claim against the defendant herein, who claims under Barfield Rogers, the plaintiff in that action.

The only effect that judgment can have, so far as the other plaintiffs are concerned, is as authority for the legal proposition which it decided, and that was, as we have seen, that the mere fact that the heirs were in possession would not be sufficient to defeat the right of the judgment creditor to sell the land under the execution obtained against the administrator. But it does not decide, and could not have decided, the question raised in this case as to whether the evidence adduced by the plaintiffs in this case was sufficient to show that, before judgment was recovered against the administrator, the heirs had taken such actual and exclusive possession of the land as would exempt it from liability to levy and sale under the judgment against the administrator. In the former case no evidence whatever was adduced by the defendant, and the question came up on a motion for non-suit, which was granted by the Circuit judge solely on the ground that, "as the heirs were in possession, the judgment and execution did not authorize the sheriff to make the levy and sale and convey the estate to the plaintiff;" and all that the Supreme Court adjudged was that the Circuit judge in that case erred in granting the non-suit. While, therefore, the judgment in the former case is conclusive against Mary A. Huggins, one of the plaintiffs herein, upon the principle of *res adjudicata,* it can have

no such effect so far as the other plaintiffs herein are concerned, and the jury should have been so instructed.

The sixth ground of appeal is taken under a misapprehension of the charge of the Circuit judge. He did not charge that no length of possession by the heirs would enable them to claim title under the statute of limitations against a purchaser at sheriff's sale under a judgment against the administrator; but his charge was that the heirs can never hold adversely against the creditors of their ancestor *until partition.* The question, therefore, intended to be raised by this ground of appeal is not properly before us; though from what we have said it follows necessarily that *actual* partition would not be necessary, but would only serve as conclusive evidence of the essential fact that the heirs had taken actual and exclusive possession, which, however, might be established by other evidence.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.